## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **PEOPLELINK LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **CASE NO. 2:14-cv-1549-SLB** |
| **BIRMINGHAM PERSONNEL** | ) | |
| **SERVICES, INC., d/b/a PEOPLELINK** | ) | |
| **HR,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This case is before the court on Plaintiff's Motion for Judgment on the Pleadings. (Doc. 20.)[1] Upon consideration of the motion, the supporting and opposing memoranda, arguments of counsel, and the relevant law, the court finds that plaintiff's Motion is due to be granted in part and denied in part.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "Judgment on the pleadings under Rule 12(c) is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir.

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

2002) (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)); *see also Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273 (11th Cir. 2008) ("Judgment on the pleadings is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law."). "Where the plaintiff moves for judgment on the pleadings, the fact allegations of the answer are taken to be true, but those of the complaint are taken as true only where and to the extent that they do not conflict with those of the answer. Thus, [a] plaintiff may not move for judgment on the pleadings where the answer raises issues of fact which if proved would defeat recovery." *Parker v. DeKalb Chrysler Plymouth*, 459 F. Supp. 184, 187-88 (N.D. Ga. 1978) (citing *Bass v. Hoagland*, 172 F.2d 205 (5th Cir. 1949), Cert. denied, 338 U.S. 816, 70 S. Ct. 57, 94 L. Ed. 494 (1949)).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Peoplelink LLC ("Peoplelink") is an Indiana-based company formed in 1987 that "provides employment staffing and placement services as well as consultation services in connection with business and personnel management." (Doc. 13 ¶¶ 1-3.) Peoplelink currently conducts business in sixteen states throughout the Midwest, Northeast, East, South, and Southeast. (*Id.* ¶ 2.) On September 18, 1995, Peoplelink's predecessor in interest filed an application with the United States Patent and Trademark Office to register the "PEOPLELINK" service mark for use in offering "consultation (business and personnel management)." (Doc. 1-1 at 1; Doc. 16 ¶ 7.) That application was registered as U.S. Service Mark Registration No. 2,008,114 (the "114 Registration") on October 15, 1996. (*Id.*)

Peoplelink then filed another application on March 14, 2000 to register the "PEOPLELINK" mark with a puzzle piece logo separating the words "People" and "link" for use in offering "employment staffing and placement services," and that application was registered as U.S. Service Mark Registration No. 2,711,721 (the "721 Registration") on April 29, 2003. (Doc. 1-1 at 2; Doc. 16 ¶ 6.) Finally, on May 10, 2011, Peoplelink filed a third application to register the "PEOPLELINK" word mark for use in offering "employment staffing and placement services," and that application issued on May 22, 2012 as U.S. Service Mark Registration No. 4,145,433 (the "433 Registration").[2] (Doc. 1-1 at 3; Doc. 16 ¶ 6.)

Defendant Birmingham Personnel Services, Inc. d/b/a PeoplelinkHR ("PHR") is a business offering job placement services in Alabama under the common law mark "PeopleLinkHR" since November 14, 2003. (Counterclaim Doc. 14 ¶ 4.)[3] PHR has continuously used this mark to promote, advertise, and offer its services throughout the state of Alabama. (*Id.* ¶¶ 5, 12.) PHR has never offered consultation services. (*Id.* ¶ 8.)

In February 2014, Peoplelink acquired 2AM Group, a premium technical services provider with offices located in Alabama. (Doc. 16 ¶ 10.) Peoplelink plans to open a new facility in Alabama in the immediate future, using the "PEOPLELINK" mark, to provide staffing services for Alabama-based employers, including 2AM Group. (*Id.*; *see also*

---

[2] As requested by plaintiff, the court judicially notices the 114, 721, and 433 Registrations under Fed. R. Evid. 201(b)(2). (*See* Doc. 20-1 at 3 n.1.)

[3] Throughout this opinion, the court will distinguish between defendant's Answer and Counterclaim by citing to the latter as (Counterclaim Doc. 14 ¶ ___.)

Counterclaim Doc. 14 ¶ 10.) Peoplelink sent PHR a cease and desist letter on July 1, 2014 demanding that PHR discontinue use of the "Peoplelink" mark, (Doc. 13 ¶ 8), and on this same day, PHR filed a name reservation for "PeoplelinkHR, LLC" with the Alabama Secretary of State.[4] (*See* Doc. 20-1 at 4 n.2.) Peoplelink asserts that, sometime after Peoplelink's acquisition of 2AM Group, an employee of 2AM Group called PHR because of the employee's mistaken belief that the two businesses were affiliated, although defendant denies this assertion based on its lack of knowledge. (Doc. 13 ¶ 17; *see* Doc. 14 ¶ 17.)

Plaintiff filed this action on August 8, 2014, seeking injunctive relief and damages against defendant for federal trademark infringement and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1114(1) and 1125(a), (Doc. 1), and filed a Second Amended Complaint asserting those same claims on September 15, 2014, (Doc. 13). In response to plaintiff's Complaint, defendant filed a Counterclaim, asserting claims against plaintiff for federal trademark infringement, false designation of origin, and unfair competition in violation of the Lanham Act, common law trademark infringement, and deceptive trade practices in violation of Ala. Code § 8-19-1. (Counterclaim Doc. 14 ¶ 1.) Plaintiff then filed the instant Motion for Judgment on the Pleadings, (Doc. 20), seeking judgment in its favor on both its claims and defendant's counterclaims, (*id.* at 1).

---

[4] The court additionally takes judicial notice of this fact under Fed. R. Evid. 201(b)(2).

4

## DISCUSSION

Plaintiff alleges that defendant has used a "Peoplelink" service mark[5] that is "virtually identical" to plaintiff's marks, that the services provided by defendant under the "PeoplelinkHR" mark are identical to the services offered by plaintiff under its "Peoplelink" marks, and that this usage by defendant constitutes trademark infringement and unfair competition in violation of sections 1114(1) and 1125(a) of the Lanham Act.  (Doc. 13 ¶¶ 16, 21, 31.)  "15 U.S.C. § 1114 covers infringement of a federally registered trademark, while 15 U.S.C. § 1125(a) more broadly covers 'any word, term, name, symbol, or device' that 'is likely to cause confusion.'"[6] *ITT Corp. v. Xylem Group, LLC*, 963 F. Supp. 2d 1309, 1317

---

[5] While a "trademark" identifies a product, a "service mark" identifies and distinguishes a service. *See Breakers of Palm Beach, Inc. v. Int'l Beach Hotel Devel., Inc.*, 824 F. Supp. 1576, 1579 n.2 (S.D. Fla. 1993). Courts conduct the same analysis for service mark and trademark infringement claims. *Tana v. Dantanna's*, 611 F.3d 767, 772 n.3 (11th Cir. 2010) (citing *Frehling Enters., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1334 n.1 (11th Cir. 1999) ("The infringement analysis is the same under both standards and courts thus treat the two terms as interchangeable in adjudicating infringement claims.")).

[6] Section 1114 provides:

(1) Any person who shall, without the consent of the registrant--

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or

n.2 (N.D. Ga. 2013) (citing *Freedom Sav. & Loan Ass'n v. Way*, 757 F.2d 1176, 1186 (11th Cir. 1985)).

"Service marks are any word, name, symbol, or device, or any combination thereof [used] . . . to identify and distinguish the services of one person . . . from the services of others and to indicate the source of the services. . . ." *Tana v. Dantanna's*, 611 F.3d 767, 772

---

> advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1). Additionally, section 1125(a) provides:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>>
>> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

6

n.3 (11th Cir. 2010) (quoting 15 U.S.C. § 1127) (internal quotations omitted). To prevail on

federal claims of trademark infringement and unfair competition, the registrant must show:

"(1) that it is the prior owner of the mark, and (2) that the defendant's trade name or service

mark is the same or confusingly similar to plaintiff's so that there exists a likelihood of

confusion to consumers as to the proper origin of the services." *Breakers of Palm Beach, Inc.*

*v. Int'l Beach Hotel Devel., Inc.*, 824 F. Supp. 1576, 1582 (S.D. Fla. 1993); *see also Suntree*

*Techs., Inc. v. Ecosense Intern., Inc.*, 693 F.3d 1338, 1346 (11th Cir. 2012) (stating that the

same test applies to trademark infringement and unfair competition claims).

15 U.S.C. § 1057(b) provides that "[a] certificate of registration of a mark upon the

principal register . . . shall be prima facie evidence of the validity of the registered mark and

of the registration of the mark, of the owner's ownership of the mark, and of the owner's

exclusive right to use the registered mark in commerce on or in connection with the goods

or services specified in the certificate . . . ." Section 1057(c) establishes priority:

> Contingent on the registration of a mark on the principal register provided by
> this chapter, the filing of the application to register such mark shall constitute
> constructive use of the mark, conferring a right of priority, nationwide in
> effect, on or in connection with the goods or services specified in the
> registration against any other person except for a person whose mark has not
> been abandoned and who, prior to such filing . . . has used the mark [or] has
> filed an application to register the mark which is pending or has resulted in
> registration of the mark. . . ."

To determine whether a likelihood of confusion exists, courts evaluate the following

seven factors: "(1) type of mark, (2) similarity of mark, (3) similarity of the products the

marks represent, (4) similarity of the parties' retail outlets and customers, (5) similarity of advertising media used, (6) defendant's intent and (7) actual confusion." *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 122 F.3d 1379, 1382 (11th Cir. 1997). The Eleventh Circuit has noted that an analysis of these factors "entails more than the mechanistic summation of the numbers of factors on each side." *Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F. Supp. 2d 1293, 1318 (N.D. Ga. 2008) (quoting *Custom Mfg. and Eng'g, Inc. v. Midway Servs.*, 508 F.3d 641, 649 (11th Cir. 2007)) (internal quotations omitted). Of these factors, courts generally consider the type of mark and evidence of actual confusion as the two most important factors. *Lone Star Steakhouse & Saloon, Inc.*, 122 F.3d at 1382. The ultimate question, though, is "whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Trilink Saw Chain, LLC*, 583 F. Supp. 2d at 1318 (quoting *Custom Mfg. and Eng'g, Inc.*, 508 F.3d at 650). "Although likelihood of confusion is a question of fact, it may be decided as a matter of law." *Tana*, 611 F.3d at 775 n.7 (citing *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1361 (11th Cir. 2007); *Alliance Metals, Inc. v. Hinely Indus., Inc.*, 222 F.3d 895, 907 (11th Cir. 2000)).

Having established that it is the prior owner of the 114 and 721 marks, and thus, that it has the exclusive right to use those marks, plaintiff must show that defendant's mark is confusingly similar to either or both of those marks to prevail on its Motion.  Regarding plaintiff's 114 mark, defendant asserts this mark is not confusingly similar to its mark

because the 114 Registration protects plaintiff's use of the mark in connection with consultation, and defendant uses its mark to offer employment staffing and placement services.  (Doc. 22 at 15.)  Defendant maintains that it has never provided consultation services, noting that "consulting" is defined as "providing professional or expert advice." (Doc. 22 at 15 (citation omitted).)  According to defendant, a client may seek both staffing services and professional business advice, but those two services "address completely different business needs and are not in competition with one another."  (*Id.*)

Plaintiff does not argue that an analysis of the 114 mark and defendant's mark under the seven-factor test would show a likelihood of confusion, but instead, states only that "PHR tries to discount the '114 Registration by stating that it covers services different than those provided by PHR. Although Peoplelink disagrees and believes that consultation (business and personnel management) does cover the services offered by PHR, this disagreement does not prevent the entry of judgment in favor of Peoplelink." (Doc. 20-1 at 9.) For purposes of this Motion, the court accepts defendant's contentions that it has never provided consultation services and that the 114 mark and PHR's mark cover different services.  Therefore, the court finds that a material issue of fact exists as to whether the 114 mark and defendant's mark are confusingly similar.

To determine whether the pleadings show, as a matter of law, that a likelihood of confusion exists between plaintiff's 721 mark and PHR's mark, an analysis under the seven-factor test is required. Plaintiff contends that "PHR essentially admits that a majority of these

9

factors are present," thus establishing that a likelihood of confusion exists. (Doc. 20-1 at 8.) Specifically, plaintiff bases its argument on "PHR's own admissions regarding the similarity of the marks, the similarity in the services provided in connection with the marks, and the actual confusion between the marks." (*Id.* at 10.) The court will address each factor in turn.

The parties do not make any arguments regarding the type of marks at issue, and defendant has not challenged plaintiff's mark as one not entitled to protection. Given that the name "Peoplelink" sounds suggestive, as opposed to generic or descriptive, the court will assume plaintiff's marks are entitled to protection and will address the remaining factors.[7]

---

[7] "Terms which may be registered as trademarks fall into four categories of strength: (1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary." *Trilink Saw Chain,* 583 F. Supp. 2d at 1311 (quoting *Dieter v. B & H Indus. of Southwest Florida, Inc.,* 880 F.2d 322, 327 (11th Cir. 1989)) (internal quotations omitted).

> The categories are based on the relationship between the name and the service or good it describes. Generic marks are the weakest and not entitled to protection—they refer to a class of which an individual service is a member (e.g., "liquor store" used in connection with the sale of liquor). Descriptive marks describe a characteristic or quality of an article or service (e.g., "vision center" denoting a place where glasses are sold). Suggestive terms suggest characteristics of the goods or services and require an effort of the imagination by the consumer in order to be understood as descriptive. For instance, "penguin" would be suggestive of refrigerators. An arbitrary mark is a word or phrase that bears no relationship to the product (e.g., "Sun Bank" is arbitrary when applied to banking services). Arbitrary marks are the strongest of the four categories.

*Id.* (quoting *Frehling Enters. v. Int'l Select Group, Inc.,* 192 F.3d 1330, 1335 (11th Cir.1999)). "[S]uggestive and arbitrary marks are presumed entitled to protection . . . ." *Id.* (citing *Sun Banks of Florida, Inc. v. Sun Federal Savings and Loan Ass'n,* 651 F.2d 311, 315 (5th Cir.1981)).

As to the similarity of the marks, defendant acknowledges that its mark and the 721 mark both use the name "Peoplelink," and while defendant does not admit that the two marks create the same commercial impression, it does state that plaintiff's 431 mark "provides the same overall commercial impression as [defendant's mark] because the mark pertains to staffing services in the same location. Both marks contain the term "People Link" and will be used in Alabama." (Doc. 14 ¶ 11.) Therefore, defendant acknowledges that two marks containing the name "Peoplelink" that are used in the same location to promote the same business create at least some similarity between the overall commercial impression of the marks. Despite these admissions, defendant disputes the similarity of the 721 mark and PHR's mark. (Doc. 22 at 17; Counterclaim Doc. 14 ¶¶ 4, 11.)

"To determine the similarity of the marks, the court compares the marks and considers the overall impressions that they create, including the sound, appearance, and manner in which they are used." *HBP, Inc.  v. Am. Marine Holdings, Inc.*, 290 F. Supp. 2d 1320, 1332 (M.D. Fla. 2003). "As a general rule, where the goods and services are directly competitive, the degree of similarity required to prove a likelihood of confusion is less than in the case of dissimilar products." *SunAmerica Corp. v. Sun Life Assur. Co. of Canada*, 890 F. Supp. 1559, 1575 (N.D. Ga. 1994) (quoting 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23.03 at 23-40 (3 ed. 1992)) (internal quotations and alterations omitted); *see also id.* ("[T]he greater the similarity between the products and services, the greater the likelihood of confusion.") (quoting *Exxon Corp.  v. Texas Motor Exch.*, 628 F.2d 500, 505

(5th Cir. 1980)). However, the court notes that even use of an identical word that predominates does not automatically render two marks similar. *Freedom Sav. and Loan Ass'n v. Way*, 757 F.2d 1176, 1183 (11th Cir. 1985).

Plaintiff's 721 mark consists of the term "Peoplelink," where "People" and "link" are separated by an image of a puzzle piece and the word "link" is italicized. (*See* Doc. 1-1 at 2.) Defendant's mark consists of the term "PEOPLELINK" in all capital letters, with "HR" in superscript following the term "Peoplelink" and a small image of a figure in a suit at the top of the mark.[8] These marks are comparable to the marks at issue in *Breakers of Palm Beach, Inc. v. International Beach Hotel Development, Inc.*, 824 F. Supp. 1576 (S.D. Fla. 1993). In that case, the plaintiff used a mark with the words "THE BREAKERS" in all capital letters, sometimes accompanied by crashing waves, and the defendant's mark used the words "The Breakers" in large and small capital letters, with the words "of fort lauderdale" in small letters below and an accompanying picture of a sailboat. *Id.* at 1584. The court found that the defendant's "mere use of lower case letters in its main image, a qualifying phrase beneath

---

[8] Defendant included an image of its mark in its Response. (Doc. 22 at 17.) The mark was not provided to the court in the pleadings. "A court may . . . consider documents attached to a motion for judgment on the pleadings without converting it into one for summary judgment if the documents are (1) central to the plaintiff[']s claim and (2) their authenticity is not challenged." *Ramey v. Interstate Fire and Cas. Co.*, 32 F. Supp. 3d 1199, 1203 (S.D. Fla. 2013) (citing *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)). The court will consider defendant's mark, even though it is not contained in the pleadings, because it is central to plaintiff's claims and is undisputed. (*See generally* Doc. 23.)

it, and a small sailboat on the side [could] not overcome the overall similarity between the two marks." *Id.* The court noted that the images in each mark were nautical symbols that did not significantly distinguish the marks. *Id.*

Similarly, in *Herbko International, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156 (Fed. Cir. 2002), a case cited by both parties, Herbko, the appellant, sought review of a decision by the Trademark Trial and Appeal Board, Patent and Trademark Office, and on appeal, the Federal Circuit upheld the Board's finding of a likelihood of confusion between the parties' marks.   *Id*. at 1165.   The parties' marks both consisted of the words "Crossword Companion," with the only difference noted by the court being that Herbko's mark displayed those words "in a two-row grid between two shorter black bands, with each letter displayed in a separate grid box." *Id*. The court stated that Herbko's design connoted a crossword puzzle, which only served to reinforce the connotation of the words in the mark. *Id*. Thus, the court found that "the puzzle design does not convey any distinct or separate impression apart from the word portion of the mark. Rather, it serves only to strengthen the impact of the word portion in creating an association with crossword puzzles." *Id*. The court went on to state that "[b]ecause the impact of the design in the overall impression is minor when compared with the words, a consumer viewing Herbko's mark would attach greater significance to the words CROSSWORD COMPANION than to the crossword puzzle design.  The words dominate the design feature." *Id.; see also In re Viterra Inc*., 671 F.3d 1358, 1362 (Fed. Cir. 2012) ("It is well settled that if a mark comprises both a word and a

design, then the word is normally accorded greater weight because it would be used by purchasers to request the goods.") (quoting in explanatory parenthetical *L.C. Licensing, Inc. v. Cary Berman*, 86 USPQ2d 1883, 1887, 2008 WL 835278, at *3 (TTAB 2008) (internal quotations and alterations omitted).

Here, much like the marks in *Breakers of Palm Beach* and *Herbko*, the words of the parties' marks dominate, and those words are identical in sound and nearly identical in appearance. Defendant notes that its logo uses a different styling of the word "Peoplelink" and an added "HR," which is set in superscript beside the work "link," (Doc. 22 at 17), but the difference in styling consists only of a different font and all capital letters. The font is not so different as to significantly distinguish the marks, and as the *Breakers* court noted, changing lower case letters to capital letters, or vice versa, and adding a qualifying phrase does not overcome the general similarity between two marks. Defendant also distinguishes the small figure in a suit placed at the top of its mark from the puzzle piece separating "People" from "link" in plaintiff's mark, stating that "[i]t is axiomatic that no customer is in danger of confusing a puzzle piece with a figure in a suit." (Doc. 22 at 17.) While defendant would be correct that two marks consisting primarily of a figure in a suit and a puzzle piece, respectively, would be very distinguishable, those images in the parties' marks do not predominate over the word portion of the marks. The small figure in a suit in defendant's mark enforces the "People" portion of "Peoplelink," and the puzzle piece enforces "link" because a puzzle piece, which must be connected or linked with other pieces to form a

14

puzzle, connotes linking.   Because the images in the parties' marks "reinforce[] the connotation created by the words of the mark[s]," and are not the focus of the marks, the marks create similar overall impressions.

Defendant attempts to distinguish its mark from the 721 mark by citing *Golden Bear International, Inc. v. Bear U.S.A., Inc.*, 969 F. Supp. 742 (N.D. Ga. 1996), and *Boston Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d 1 (1st Cir. 2008), but defendant's comparisons are unavailing. The marks at issue in *Golden Bear* both consisted of images of a bear and accompanying words.   The court first found that the sound of the marks was not confusing because the words "Golden Bear" appeared in The Golden Bear mark, and the term "Bear USA" appeared in Bear USA's mark.  *Id*. at 745.   The court then considered the difference in appearance, stating that one bear was moving, while the other appeared stationary and that the bears faced opposite directions.  *Id*.  Importantly, the court also relied on the different meaning behind the marks. *Id*. The Golden Bear mark, associated with famous golfer Jack Nicklaus, reflected the "qualities associated with Mr. Nicklaus' career," and primarily appeared on "golfing equipment or sportswear and clothing associated with golf or the lifestyle of golf." *Id*. at 744-45.   The Bear USA mark, on the other hand, incorporated a polar bear design, which was "intended to suggest the warmth and strength of its major products, which are parkas and other outerwear" and was primarily sold to "an inner-city market" to "meet the demands of the 'hip-hop' consumer."  *Id*.  Based in part on

these significant differences in the marks and the products, the court denied the plaintiff's motion for a preliminary injunction. *Id*. at 749.

In *Boston Duck Tours*, the appellant's mark consisted of the words "Super Duck Tours," and the appellee's mark used the words "Boston Duck Tours."  531 F.3d at 7.  Both parties were "in the business of offering sightseeing tours via land and water in Boston, using amphibious vehicles commonly referred to as 'ducks.'"  *Id*. at 8.  The court found that the parties' design marks were dissimilar because each used a cartoon duck in water that was "significantly different in overall appearance" and included substantially dissimilar elements "depicted in conjunction with the duck."  *Id*. at 29.  However, the court considered the similarity of the design marks only after finding that the parties' word marks were dissimilar. *Id.* at 25.

In analyzing the word marks, the court concluded that the term "duck tour" was generic,[9] as the phrase identified the nature of the services provided by both parties.  *Id*. at 18.  In giving less weight to the generic portions of the marks, the court focused its inquiry on the words "Boston" and "Super."  *Id*. at 24-25.  The court determined that the word marks were "reasonably, although not completely, dissimilar" based on the different look, sound, and meaning of the words "Boston" and "Super."  *Id.* at 25.  Here, no additional, distinctive words set the parties' marks apart as was the case in *Golden Bear* and *Boston Duck Tour*, and

_____

[9] "[A] generic term is one whose primary significance . . . to the relevant public is an identifier of the nature of a good, rather than its source."  *Boston Duck Tours*, 531 F.3d at 18 (citation and internal quotations omitted).

this case is further distinguishable from *Golden Bear*, given that plaintiff and defendant offer the same services to the same consumer base, while the *Golden Bear* parties offered different types of men's sportswear to different target consumer groups.

The differences emphasized by defendant do not distinguish the marks in a meaningful way. Judgment on the pleadings is appropriate when a "non-movant can plead no facts that would support the claim for relief," *Doe v. Bd. of Cnty. Com'rs, Palm Beach Cnty., Fla.*, 815 F. Supp. 1448, 1449-50 (S.D. Fla. 1992) (citing *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)), and here, the court cannot imagine a set of facts defendant could prove to diminish the similarity of the marks in such a way as to render them not likely to cause consumer confusion.  This is particularly the case because defendant admitted to offering the same services as plaintiff in the same location, and "where the goods and services are directly competitive, the degree of similarity required to prove a likelihood of confusion is less than in the case of dissimilar products." *SunAmerica Corp.*, 890 F. Supp. at 1575.

The next factor is the similarity of services offered by the parties.  Again, plaintiff and defendant agree that they offer the same services, namely employment staffing and job placement services, (Counterclaim Doc. 14 ¶¶ 4, 11; Doc. 20-1 at 8-9; Doc. 22 at 15), which weighs in favor of finding a likelihood of confusion.  *See HBP, Inc.*, 290 F. Supp. 2d at 1333 ("The greater the similarity between the products and services, the greater the likelihood of confusion.").  Because plaintiff acquired 2AM Group in February 2014 to provide 2AM

17

Group's Alabama offices with employment staffing services, the parties are directly competing in the same geographic area.  Additionally, defendant acknowledges plaintiff's intent to establish an office in Alabama in the immediate future and even asserts that plaintiff has been using the "Peoplelink" mark in commerce to promote and advertise its staffing services in Alabama.  While defendant does not explicitly state that the parties share the same retail outlets and customers, both parties stated that their clientele consists of staffing agencies, clients, and employee candidates, and neither party claims to offer services to a unique or specialized subset of businesses or employee candidates.  (Counterclaim Doc. 14 ¶ 13; *see* Doc. 20-1 at 9.)  Therefore, this factor weighs in favor of plaintiff.

The next factor, the similarity of advertising media used by each party, does not weigh in favor of either party, because while defendant contends that it has extensively advertised in Alabama and that plaintiff has promoted and advertised its staffing services in Alabama, plaintiff has not shown that the parties utilize the same advertising mediums.  Further, as to the "intent" factor, plaintiff has offered no evidence that defendant began using the "Peoplelink" mark with an improper subjective intent.

Regarding the last factor of actual confusion, plaintiff maintains that the most important admission by defendant is the statement in paragraph 13 of the Counterclaim that:

> [u]pon information and belief, Peoplelink, LLC's use of the "People Link" trademark has caused and will cause substantial actual confusion and a likelihood of confusion among staffing agency customers/clients/employee candidates and ordinary users of the services provided by PHR under the Senior Mark in Alabama.

(Doc. 23 at 4 (quoting Counterclaim Doc. 14 ¶ 13); *see also* Doc. 20-1 at 9.) However, in paragraph 11 of the Counterclaim, defendant asserts:

> Peoplelink, LLC's 2011 trademark provides the same overall commercial impression as Senior Mark because the mark pertains to staffing services in the same location. Both marks contain the term "People Link" and will be used in Alabama.

(Counterclaim Doc. 14 ¶ 11.) Plaintiff attempts to show actual confusion between its 721 mark and defendant's mark based on defendant's assertion by pulling defendant's statement out of context. (*See* Doc. 23 at 4.)When read in conjunction with paragraph 11, defendant's admission in paragraph 13 clearly admits confusion between only plaintiff's 433 mark and PHR's mark.

The only additional evidence plaintiff offers of actual confusion is plaintiff's assertion that an employee of 2AM Group called PHR based on a mistaken belief that PHR and Peoplelink are affiliated entities. However, defendant disputes this evidence in its Answer, and, even if the court considered the evidence, it provides only one example of actual confusion. Nevertheless, while important, "the absence of actual confusion is not dispositive of the issue of likelihood of confusion," *Trilink Saw Chain, LLC.*, 583 F. Supp. 2d at 1316, and this seems especially true where, as here, plaintiff intends to immediately enter the Alabama market but has not yet done so, thereby reducing the opportunity for actual confusion to occur.

Based on the foregoing analysis under the seven-factor test, the court concludes that, as a matter of law, a likelihood of confusion exists between the 721 mark and PHR's mark.

Therefore, defendant has infringed on plaintiff's mark, and injunctive relief prohibiting defendant from using plaintiff's "Peoplelink" mark is appropriate.  However, the court agrees with defendant that plaintiff has not shown damages from defendant's infringement. Peoplelink acquired 2AM Group in February 2014 to provide employment staffing services to that business.   To bring a claim for trademark infringement, the plaintiff must have protectible rights to a trademark.  *Citibank, N.A. v. Citibanc Group, Inc.*, 724 F.2d 1540, 1546 (11th Cir. 1984).  "In other words, the owner of the mark must have expanded into the infringer's territory such than an action can be maintained."  *Id*.; *see also Tally-Ho, Inc. v. Coast Cmty. Coll. Dist*., 889 F.2d 1018, 1024-25 (11th Cir. 1989) ("In an infringement action, the plaintiff must initially demonstrate the right to a trademark and actual geographic and product competition with the alleged infringer.").   "[I]f the use of the marks by the registrant and the unauthorized user are confined to two sufficiently distinct and geographically separate markets, with no likelihood that the registrant will expand his use into defendant's market, so that no public confusion is possible, then the registrant is not entitled to enjoin the junior user's use of the mark."  *Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 364 (2d Cir. 1959) (footnote omitted); *see also Citibank, N.A.,* 724 F.2d at 1546 (citing *Dawn Donut* for this proposition).

Plaintiff admits that it expanded into PHR's market in February 2014 and that "its claims against PHR could not have arisen until February 2014." (Doc. 23 at 12.)  Thus, as a matter of law, plaintiff cannot show damages prior to February 2014, and plaintiff has not

proved any damages since February 2014.  Therefore, the court denies plaintiff's motion insofar as it requests damages.

Defendant next raises a laches argument and contends that this argument precludes judgment in plaintiff's favor. (Doc. 22 at 6.)  Specifically, defendant contends that plaintiff waited eleven years, from 2003, when defendant began using its mark, until 2014, when plaintiff filed this action, to protect its mark and that this delay warrants an application of laches.  (*Id.* at 7.)  To show laches, defendant must prove:  "(1) a delay in asserting a right or a claim; (2) that the delay was not excusable; and (3) that the delay caused defendant undue prejudice." *Citibank, N.A.*, 724 F.2d at 1546 (quoting *Envtl. Def. Fund v. Alexander*, 614 F.2d 474 (5th Cir. 1980)) (internal quotations omitted).  As stated above, a plaintiff must have protectible rights to bring a trademark claim, meaning "the owner of the mark must have expanded into the infringer's territory such that an action can be maintained." *Id.*

In response to defendant's argument, plaintiff asserts that a valid claim against defendant "could not have arisen until February 2014" when plaintiff entered the Alabama market through its acquisition of 2AM Group, and therefore, plaintiff did not unreasonably delay in asserting its trademark rights against defendant.  (Doc. 23 at 12.)  Plaintiff's argument is consistent with the rule from *Dawn Donut* that a junior user of a mark may use a registered mark if "the registrant and the unauthorized user are confined to two sufficiently distinct and geographically separate markets, with no likelihood that the registrant will expand his use into the defendant's market." 267 F.2d at 364.  Because plaintiff's protectible

21

right arose in February 2014, and plaintiff filed this action shortly thereafter in August 2014, plaintiff did not unreasonably delay in protecting its mark.  Defendant asserts that because plaintiff seeks damages relating to defendant's past conduct, plaintiff is judicially estopped from arguing that its rights became protectible only in February 2014.  (Doc. 22 at 8.) However, plaintiff's claims seeking damages for past conduct, which the court has determined to be unmeritorious at this stage, do not change the fact that plaintiff did not have a valid claim for trademark infringement until plaintiff entered the Alabama market in February 2014.  (Doc. 23 at 13.)

Additionally, defendant's attempt to compare this case to *Saul Zaentz Co. v. Wozniak Travel, Inc.*, 627 F. Supp. 2d 1096 (N.D. Cal. 2008), is unpersuasive.  In that case, Token Enterprises, the owner of the rights to the Hobbit mark, brought a trademark infringement claim against Wozniak Travel, Inc., which operated as Hobbit Travel.  *Id.* at 1107.  The court granted the defendant's motion for summary judgment on the basis of laches, finding that plaintiff had waited eighteen years to protect its trademark rights, which constituted an unreasonable delay.  *Id.* at 1121.  The court relied on several reports ordered by plaintiff, the first of which plaintiff received eighteen years prior, which revealed that Wozniak Travel owned Hobbit Travel.  *Id.* at 1111.  The court stated that a reasonably prudent person would have investigated further and discovered "that defendant had been operating a successful travel agency under the Hobbit mark openly and continuously for many years."  *Id.* at 1112. The court noted that "defendant has sold approximately $1 billion in travel services under

22

the name Hobbit Travel," and that its "[a]dvertising has been continuous and widespread, covering a variety of regional and national media outlets including newspapers, magazines, televison, and radio." *Id.*

Even assuming plaintiff could have brought a trademark action before 2014, this case is unlike *Wozniak Travel* because, as plaintiff points out, defendant was registered with the Alabama Secretary of State only as Birmingham Personnel Services until July 1, 2014, when defendant filed a name reservation for "PeoplelinkHR, LLC." Thus, the various ways in which the *Wozniak Travel* court found plaintiff to have constructive knowledge of defendant's business are not applicable in this case. The court finds that defendant does not have a viable laches defense. The court has also considered defendant's other defenses and finds that none are meritorious.

Plaintiff also seeks judgment on the pleadings on defendant's counterclaims. Defendant asserts claims against plaintiff for federal trademark infringement, false designation of origin, and unfair competition in violation of the Lanham Act, common law trademark infringement, and deceptive trade practices in violation of Ala. Code § 8-19-1. (Counterclaim Doc. 14 ¶ 1.) Defendant contends that, while plaintiff's 114 and 721 marks do not create confusion with its mark, plaintiff's 431 mark, which plaintiff applied for in 2011, does create the "same overall commercial impression" as defendant's mark. (*Id.* ¶¶ 9, 11.) Defendant further asserts that plaintiff "is using the trade name 'People Link' to identify its business in Alabama," that plaintiff has been using the "PeopleLink" mark in commerce

to promote and advertise its staffing services, and that plaintiff "has acted with actual knowledge of PHR's long use" of its mark in Alabama.  (*Id.* ¶¶ 14-16.)

Given the court's finding that plaintiff has the exclusive right to use its 721 mark and that use of PHR's mark has infringed on that right, defendant cannot sustain its claims under the Lanham Act because it cannot show prior use of its mark.  Therefore, the court will grant plaintiff's Motion as to defendant's claims under the Lanham Act.  Judgment is also due to be entered on defendant's claims for common law trademark infringement and deceptive trade practices because "the legal analysis for th[ose] claim[s] is identical to the Lanham Act analysis."  *Movie Gallery US, LLC v. Greenshields*, 648 F. Supp. 2d 1252, 1276 (M.D. Ala. 2009).

## CONCLUSION

Based on the foregoing reasons, plaintiff's Motion for Judgment on the Pleadings, (Doc. 20), will be granted as to plaintiff's claims seeking injunctive relief and defendant's counterclaims and denied as to plaintiff's claims seeking damages. An order in accordance will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 30th day of June, 2015.


*Sharon Lovelace Blackburn*
_____
SHARON  LOVELACE  BLACKBURN
SENIOR UNITED STATES DISTRICT JUDGE

24